UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ROBERTA FOWLER,

                    Plaintiff,                **MEMORANDUM and**

      - against -                       **ORDER**

VISITING NURSE SERVICE OF NEW YORK    06 Civ. 4351
and JANE LANDERS,                      (NRB)

                    Defendants.
----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

      Before this Court is defendants VNS Choice Community Care ("VNS") and Jane Landers's motion for summary judgment and for sanctions against plaintiff, Roberta Fowler, and/or her counsel, Andrew Schatkin.  The complaint alleges race and national origin employment discrimination under both 42 U.S.C. § 1981 and Title VII.  For the reasons set forth below, defendants' motion for summary judgment is granted as is defendants' motion for sanctions.

**BACKGROUND**[1]

---

[1] On summary judgment, we are "required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted).  As such, we resolve any conflicts between the factual assertions made by the parties in favor of the plaintiff.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (noting that, upon a summary judgment motion, the plaintiff "will receive the benefit of the doubt when

Plaintiff, an African-American from North Carolina who has a high school diploma, began working at VNS, a home health agency that provides long-term care for elderly patients, in January 2003.  Defs. R. 56.1 Stat. ¶¶ 1, 10. Plaintiff was hired by Jane Landers, who was plaintiff's supervisor during her tenure at VNS.  At the interview with Landers, plaintiff, who has a southern accent, discussed her southern background.  Id. at ¶ 11.  The office in which plaintiff and Landers worked was diverse.  Most of the other employees were Black or Hispanic.  Of the Black employees, most of them were of West Indian origin, and others were African-American – or "northern" African-American, the term plaintiff uses to distinguish them from herself.  Fowler Dep. 50; Pl. Br. 11.

Plaintiff worked as a Program Assistant in the Program Initiatives department.  In this capacity, plaintiff performed general clerical and administrative functions such as managing data entry and reports, assisting nurses with time-keeping, and maintaining VNS's stock of phones and beepers.  Her employment proceeded without incident for nine months.  In October 2003, a dispute arose between plaintiff and Landers when Landers confronted plaintiff

---

[her] assertions conflict with those of the movant") (internal quotation marks and citation omitted).

about a telephone reprogramming project that was not functioning properly. Defs. R. 56.1 Stat. ¶¶ 30-31. Landers and plaintiff shouted at each other but Landers later approached plaintiff, apologized, emphasized that she did not want plaintiff to quit, and hugged her. Id. at ¶ 32. At this point, plaintiff was pleased with Landers' apology and there were no more significant incidents between Landers and plaintiff during the next 11 months. See Fowler Dep. 36.

In March 2004, plaintiff received a constructive but negative performance review for the 2003 calendar year. While Landers rated plaintiff highly for coordinating the office's move to a new location, plaintiff was deemed to "need improvement" in most areas in which she was assessed. See Defs. R. 56.1 Stat. ¶¶ 35-36.

During the review process, plaintiff was also informed that her job position was changing and that her employment could be in jeopardy if she did not improve her performance.[2]   Fowler Dep. 128. However, plaintiff was encouraged to apply for another position at VNS. Id. at 204.

---

[2]   Plaintiff claims that she was aware that her job "title" would be changed at some future date but claims that she did not receive notice that her position was being eliminated until later. Fowler Dep. 128. VNS, on the other hand, claims that it notified plaintiff in March 2004 that her position would be eliminated completely.

In October 2004, another "fight" between Landers and plaintiff occurred.  Landers asked plaintiff for certain data and plaintiff was unable to provide it.  When Landers began questioning plaintiff about the missing data, Landers perceived that plaintiff was being unresponsive and rude, which led to a heated exchange.  Defs. R. 56.1 Stat. ¶¶ 43-46.  Plaintiff left Landers' office abruptly and sent a complaint to Silvia Viciedo of the human resources department a few days later.  The letter to Viciedo detailed plaintiff's version of both the October 2003 and October 2004 incidents and claimed that Landers was requiring plaintiff to assist other workers with their responsibilities on top of her normal workload.  Id. at ¶ 32, Ex. 2.

On November 8, 2004, Viciedo met with Landers and plaintiff.  Viciedo explained to plaintiff that her work was not satisfactory and that, in any event, her position was being eliminated by VNS.  Fowler Dep. 128.  Viciedo advised plaintiff that she should consider other employment.  Plaintiff sent a follow-up letter to Viciedo in which she complained that Viciedo's investigation into Landers' relationship with her was incomplete.  Defs. R. 56.1 Stat. ¶ 52, Ex. 3.  Notably, she stated that, had

Viciedo investigated further, she would have discovered that Landers had conflicts with other employees.[3]

In March 2005, plaintiff received her performance review for 2004. <u>Id.</u> at ¶¶ 55-56. Again, she received marks of "needs improvement" in most of the listed categories. She also received a "does not meet" rating for other categories. At the meeting to discuss her review, plaintiff was reminded that her position was being "upgraded" to an Administrative Coordinator position that required more skills and experience and that was to be filled by a college graduate. <u>Id.</u> at ¶ 58-64. Thus, plaintiff was told that her employment would end on April 1, 2005. <u>Id.</u> at ¶ 60. Plaintiff did not apply for the Administrative Coordinator position or any other position at VNS even though it had been suggested that she apply for the "Management Services Representative" position, which did not require the same level of experience and education as the Administrative Coordinator position.

The Administrative Coordinator position was filled temporarily by Jinnell Brown, an African-American with a college degree, and then on a permanent basis by Olga

---

[3] In addition, at her deposition, plaintiff testified that she witnessed Landers yelling at other employees, some of whom did not share plaintiff's race or national origin. Fowler Dep. 57.

Ortiz, a Hispanic-American college graduate who had many years of experience in a similar position. Id. at ¶¶ 70-71.

After she was terminated, plaintiff filed a discrimination complaint with the New York State Division of Human Rights, which was dismissed. Id. at ¶ 7. She then began this lawsuit and the parties began discovery, including the exchange of documents. Plaintiff's counsel gave defendants' document requests, without any instructions or directions to plaintiff, who only produced a portion of the responsive documents and materials at first. Id. at ¶ 80. Plaintiff had apparently also taken home confidential documents and tape recordings from VNS which were not initially produced. At plaintiff's deposition in mid-January 2007, defendants' attorneys learned that plaintiff still had documents and recordings that belonged to VNS and that were responsive. See Fowler Dep. 281-83. After further requests, plaintiff eventually produced all the documents and other materials in her possession by the end of January 2007. Defs. R. 56.1 Stat. ¶ 90.

## DISCUSSION

### I.   Standard for Summary Judgment

A motion for summary judgment must be granted if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).   In deciding a motion for summary judgment, the evidence submitted must be viewed in the light most favorable to the nonmoving party.   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).   Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   Even if parties dispute material facts, summary judgment must be granted "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."   Golden Pacific Bancorp. v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004) (internal citations and quotation marks omitted).   In addition, once the moving party has made a sufficient showing, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the

events is not wholly fanciful." Id. (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)).

The Second Circuit has stated that district courts should be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (quoting Gallo v. Prudential Residential Services, 22 F.3d 1219, 1224 (2d Cir. 1994)). However, summary judgment in an employment discrimination case may still be appropriate if the plaintiff relies "on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." Tojzan v. New York Presbyterian Hosp., No. 00 Civ. 6105 (WHP), 2003 WL 1738993, at *4 (S.D.N.Y. Mar. 31, 2003). This is because, as the Second Circuit has stated:

> [t]he summary judgment rule would be rendered
> sterile . . . if the mere incantation of intent
> or state of mind would operate as a talisman to
> defeat an otherwise valid motion. Indeed, the
> salutary purposes of summary judgment – avoiding
> protracted, expensive and harassing trials –
> apply no less to discrimination cases than to
> commercial or other areas of litigation."

<u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985); <u>see also</u> <u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 239 F.3d 456, 466 (2d Cir. 2001).

## II.  Plaintiff's Section 1981 and Title VII Claims

### A.    Applicable Law

Plaintiff claims she was terminated because of her "Southern African American" race and national origin.  She claims this was discrimination in violation of both 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964.[4]

Section 1981 of Title 42 is the current codification of Section 16 of the Civil Rights Act of 1870 and "affords a federal remedy against discrimination in private employment on the basis of race."  <u>Johnson v. Railway Exp.</u> <u>Agency, Inc.</u>, 421 U.S. 454, 460 (1975).  While this provision protects against discrimination on the basis of ancestry and ethnicity, it does not extend to discrimination on the basis of national origin.  <u>See</u> <u>Anderson v. Conboy</u>, 156 F.3d 167, 170 (2d Cir. 1998)

---

[4]  The complaint also contained a count of intentional infliction of emotional distress but plaintiff dropped that count after defendants' counsel threatened to bring a motion for Rule 11 sanctions.

(citing St. Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987)).[5]

Title VII, however, does protect against national origin discrimination, as well as discrimination on the basis of race.  Its core provision makes it an unlawful employment practice for employers:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify . . . employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

While both statutes are aimed at eliminating employment discrimination, their provisions "have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of

---

[5] The cases plaintiff cites are not to the contrary.  Those cases, involving certain groups, such as Mexican-Americans, held that the plaintiffs could pursue claims under § 1981 only "to the extent that [the discrimination] is motivated by or indistinguishable from racial discrimination."  Enriquez v. Honeywell, 431 F. Supp. 901, 904 (W.D. Okla. 1977) (quoting Cubas v. Rapid Am. Corp., Inc., 420 F. Supp. 663, 665 (E.D. Pa. 1976)); see also Evans v. Nurses Ass'n, 657 F. Supp. 1277 (W.D. Mo. 1987); Banker v. Time Chemical, Inc., 579 F. Supp. 1183, 1187 (N.D. Ill. 1983).

the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Rodgers v. U.S. Bank, 417 F.3d 845, 854 (8th Cir. 2005) (quoting Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995)). Thus, courts "must refrain from intruding into an employer's policy apparatus or second-guessing a business's decisionmaking process." Meiri, 759 F.2d at 995.

The analytical framework for § 1981 and Title VII claims is the same.[6] To avoid dismissal on a motion for summary judgment, a plaintiff must withstand the three part burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McPherson v. New York City Department of Education, 457 F.3d 211, 215 (2d Cir. 2006). First, the plaintiff must establish a prima facia case by demonstrating: (1) that she is a member of a protected class; (2) that her job performance was satisfactory; (3) that she suffered from an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See DeMoret v. Zegarelli, 451

---

[6] See Ayiloge v. City of New York, No. 00 Civ. 5051 (THK), 2002 WL 1424589, *16 (S.D.N.Y. June 28, 2002) (noting that § 1981 and Title VII employ the same burden-shifting framework); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997) (noting that the prima facie case for both § 1981 and Title VII is the same).

F.3d 140, 151 (2d Cir. 2006) (citing <u>McDonnell Douglas</u>, 411 U.S. at 802).  If the plaintiff can demonstrate a <u>prima facie</u> case, the burden then shifts to the defendant employer to provide a legitimate non-discriminatory reason for the adverse employment action.  <u>Id.</u>  If such a showing is made by the defendant, then the burden shifts back to the plaintiff to prove that discrimination indeed existed, for example, by showing that the employer's proffered reason is mere pretext.  <u>Id.</u>  However:

> [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated [against the plaintiff] remains at all times with the plaintiff.  Thus, once the employer has proffered its nondiscriminatory reason, the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.

<u>Joseph v. Leavitt</u>, 465 F.3d 87, 90 (2d Cir. 2006) (quoting <u>James v. New York Racing Ass'n</u>, 233 F.3d 149, 153-54 (2d Cir. 2000)).

### B.  Plaintiff's <u>Prima Facie</u> Case

Defendants argue that plaintiff cannot establish a <u>prima facie</u> case.[7]  With respect to the first element,

---

[7] There is no dispute that the third element of the <u>prima facie</u> case – whether plaintiff suffered an adverse employment action – is met because plaintiff was terminated.
The second element of the <u>prima facie</u> case – whether plaintiff's performance was satisfactory – is disputed. Defendants argue plaintiff's performance was poor and point to her negative performance reviews for support.  Defs. Br. 17.

plaintiff must establish that she is a member of a protected class.  To differentiate herself from the other VNS employees, plaintiff suggests the novel concept that she is a member of the protected class of "Southern African American."  However, the regional differences among the people of this country do not create protected classes.  See Williams v. Frank, 757 F. Supp. 112, 120 (D. Mass. 1991) (holding, in a case where plaintiff was mocked because of his accent, that "Southernness is not a protected trait"); see also Langadinos v. Appalachian Sch. of Law, No. 1:05-CV-00039, 2005 WL 2333460, at *8 (W.D. Va. Sep. 25, 2005) (holding that northeastern background was not a protected trait).  Thus, the state or region of the

---

However, to satisfy this element of the prima facie case, plaintiff "need not show perfect performance or even average performance.  Instead, she need only make the minimal showing that she possesses the basic skills necessary for performance of [the] job." Gregory v. Daly, 243 F.3d 687, 696 (2d Cir. 2001) (internal quotation marks and citations omitted); see also Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91-92 (2d Cir. 2001).

   Plaintiff has met this de minumus threshold here.  First, the fact that VNS hired plaintiff indicates that it felt she was qualified for the Program Assistant position.  See Gregory, 243 F.3d at 696 ("In a discharge case in which the employer has already hired the employee into the job in question, the inference of minimal qualification is . . . eas[y] to draw . . . because, by hiring the employee, the employer itself has already expressed a belief that she is minimally qualified.").  Second, plaintiff was encouraged to apply for another position at VNS, which indicates a certain level of satisfaction with her performance.  Finally, not only were there positive aspects of plaintiff's performance reviews, but, more importantly, VNS did not terminate plaintiff because of her poor performance.

United States where plaintiff was raised is irrelevant to her national origin claim.  Her national origin is American and to defeat summary judgment on her Title VII national origin claim, she must show that she was mistreated as compared to non-Americans.

    With respect to the fourth element of the prima facie case, defendants argue that plaintiff cannot show that the circumstances surrounding her termination create an inference of either race (African-American) or national origin (American) discrimination.  To raise an inference of discrimination, plaintiff "must compare herself to employees who are similarly situated in all material respects" and show that she was mistreated.  Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999). She does not accomplish this.  Plaintiff claims that her conflicts with Landers are evidence of discrimination. However, plaintiff testified that Landers would yell at other employees, both black and non-black, American and non-American.  Fowler Dep. 57.  She also suggested in her letter to VNS's human resources department that Landers had systematic problems interacting with her staff.  Florentino Aff. Ex. 3.  While the record does not show whether these conflicts were as acute as those between Landers and plaintiff, plaintiff does not show that other employees

14

with performance problems were treated more favorably by Landers.[8]

Moreover, there is no evidence of a pattern of mistreatment of other African-Americans during the relevant period. Plaintiff even admitted that Landers treated other employees who shared her race and national origin fairly. Fowler Dep. 45-50. Plaintiff also testified that Landers had no conflicts with many black employees. Fowler Dep. 244-45. Indeed, Landers promoted many black employees, and some Americans. And significantly, Landers hired an African-American for the newly created Administrative Coordinator position. See Defs. R. 56.1 Stat. ¶ 71.

In sum, even without documentation concerning the treatment of each employee in the Bronx VNS office, it is clear from plaintiff's own testimony that the office was a diverse workplace where Landers treated people of plaintiff's race and national origin in a similar manner: Landers could be harsh with people inside and outside of

---

[8] For example, plaintiff claims that she was the only employee required to keep a daily activity log. Pl. Br. 13. However, this requirement arose after plaintiff's first negative performance review and plaintiff does not identify any other VNS employees who had a negative review but were not required to keep an activity log. In fact, the log should not necessarily be seen as a disciplinary device. It is at least as equally possible that it was designed to improve plaintiff's job performance to the benefit of both herself and her employer after her performance review noted deficiencies with respect to "time management" and "priority setting." Defs. R. 56.1 Stat. ¶ 36.

the relevant protected classes, but both people inside and outside of those protected classes were treated fairly. Thus, plaintiff has not shown that she was fired under circumstances that create an inference of discrimination.

However, while it would be possible to grant summary judgment for defendants' on this point alone, because plaintiff was the only employee fired at the relevant time, we will assume that plaintiff has made a <u>prima facie</u> showing in order to complete the <u>McDonnell Douglas</u> burden-shifting analysis.

### C.   The <u>McDonnell Douglas</u> Burden Shifting Analysis

Defendants' proffered legitimate non-discriminatory reason for terminating plaintiff plaintiff's employment is that it eliminated the Program Assistant position in favor of an "upgraded" Administrative Coordinator position that required a more advanced skill set and work background than that which was required for the Program Assistant position. <u>See</u> Defs. R. 56.1 Stat. ¶ 63-67. Defendants maintain that the decision was made because VNS felt that the Program Initiatives Department, headed by Landers, required more assistance in: (1) planning the day-to-day operations of the group; (2) developing and preparing statistical reports; (3) monitoring the budget; and (4) preparing correspondence, presentations, and reports. Landers First

Aff. ¶ 5.   The Program Assistant position, which was clerical in nature, did not encompass these responsibilities and did not require the skills necessary to perform them.   This structural decision was made by the Human Resources department but seems to have been limited to the Program Initiatives department at VNS in which plaintiff worked.[9]   Despite the disputed breadth of the restructuring, it is undisputed that plaintiff's job functions were eliminated through the implementation of the Administrative Coordinator position.   Thus, we find that defendants have stated a legitimate non-discriminatory reason for plaintiff's termination.   <u>See</u> <u>Reeves v.</u> <u>Sanderson Plumbing Prods.</u>, Inc., 530 U.S. 133, 143 (2000) (noting that the defendant's burden is a "burden of production" and is met when a defendant offers "admissible evidence sufficient for the trier of fact to conclude" that the offered legitimate non-discriminatory reason was real).

As a result, the burden shifts to plaintiff to show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."   <u>Id.</u>   (quotation marks and citation

---

[9]   Drawing all reasonable inferences in favor of the plaintiff, there is no specific support for defendants' suggestion that this position was eliminated in other VNS offices.   At her deposition, Landers was unable to point to other Program Assistant employees who lost their jobs as the result of a company-wide business reorganization.   Landers Dep. 66-67.

omitted).   Plaintiff has not met this burden.   Without providing any evidence, plaintiff paints the decision to eliminate the Program Assistant position in favor of the Administrative Coordinator position as a "one-person replacement and assassination."   Pl. Br. 26.   Plaintiff contrasts this case to Wallace v. Sparks Health System, 415 F.3d 853 (8th Cir. 2005), in which over 100 employees were terminated, to support her claim of pretext.   However, the fact that plaintiff was the only employee to lose her job does not show pretext.   Cf. DiCola v. Swissre Holding (North America), Inc., 996 F.2d 30, 33 (2d Cir. 1993) (denying plaintiff's claim of pretext where defendant's new restructuring policy eliminated only two positions).   The Program Assistant position in the Bronx office was indeed eliminated as planned[10] and VNS filled the new Administrative Coordinator position on two separate occasions.   Both of these employees had superior credentials to plaintiff: they both had college degrees and the most recent hire had years of experience performing the organizational and analytical functions required by the new Administrative Coordinator position.   Plaintiff does not

---

[10] Another employee who was a Program Assistant in a different department when plaintiff was hired had been promoted to a different position by the time plaintiff was fired.   Landers Second Aff. ¶ 3.

dispute these facts and does not argue that she was qualified to perform the functions of the Administrative Coordinator.

That plaintiff was encouraged to apply for another position in VNS and was given repeated early warnings that the Program Assistant position was being eliminated also support the conclusion that defendants' explanation is not pretextual. Plaintiff does not dispute that VNS was willing to consider transferring her to another position for which she was qualified – in fact, at her deposition, plaintiff testified that she chose not to apply for the position Landers suggested because it involved too much phone work. Fowler Dep. 204. These circumstances are inconsistent with a discriminatory elimination of plaintiff's position.

In sum, plaintiff has not rebutted defendants' legitimate non-discriminatory reason for her termination. We do not sit as a "super-personnel department", Rodgers, 417 F.3d at 854, and, as such, we cannot conclude, in the absence of evidence of pretext, that a business decision that eliminates one employee is pretextual simply for that reason. Given the undisputed record VNS has provided about its personnel decision (not to mention the other evidence that plaintiff was not singled out due to her race or

national origin), we must grant summary judgment in favor of defendants on plaintiff's 42 U.S.C. § 1981 and Title VII race and national origin claims.

## II.  Sanctions

Defendants also move for sanctions against plaintiff and her attorney, Andrew Schatkin, under Rule 26(g) and Rule 37(b) of the Federal Rules of Civil Procedure for their failure to provide all the relevant documents that were responsive to defendants' document requests in a timely manner.  Document discovery was to be completed by January 22, 2007, but, at a court conference on that date, Schatkin received a box of un-produced documents from plaintiff which he then produced to defendants.  A few days later plaintiff produced even more documents that should have been produced earlier.  See Defs. R. 56.1. Stat. ¶ 90.

### A. Rule 26(g)

Rule 26(g)(2) of the Federal Rules of Civil Procedure requires an attorney to sign all discovery responses.  The attorney's signature constitutes a certification that to the "best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the request, response, or objection is . . . not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

Rule 26(g)(2) is enforceable through Rule 26(g)(3), which states:

> If without substantial justification a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

Defendants claim that Schatkin violated this rule by not establishing an effective system for responding to their document requests. See Defs. Br. 26-27. However, while this may be true, defendants fail to point to a certification made by Schatkin that triggers the application of Rule 26(g). Thus, we cannot grant sanctions under Rule 26(g).

**B. Rule 37(b)**

Defendants also seek sanctions under Rule 37(b)(2)(C), which provides that if a party fails to obey a court order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other

circumstances make an award of expenses unjust."[11] Defendants seek sanctions on the ground that plaintiff and her attorney failed to obey the court's discovery scheduling order because they produced documents after the January 22 deadline.  It is indisputable that plaintiff failed to produce all of the relevant documents in a timely manner apparently as the result of inappropriate delegation of discovery responsibilities by plaintiff's counsel. This failure obviously caused defendants to incur some additional expenses.  Even though defendants would have had to review the documents had they been timely produced, their late production required defendants to take an additional deposition.  Preparing for this additional deposition resulting in the incurrence of additional attorney's fees as well as another appearance fee from the reporter.  Accordingly, we award defendants $750 as reasonable expenses and attorney's fees under Rules 16(f) and 37(b) to be recovered solely from plaintiff's counsel.

---

[11] Rule 16 provides an overlapping basis to award sanctions. <u>See</u> Fed. R. Civ. P. 16(f) (providing that a court may order sanctions against a noncompliant party if similar circumstances as required by Rule 37(b) are present).

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment and sanctions are granted. Defendants shall recover $750 in reasonable attorney's fees and costs from plaintiff's counsel.

**SO ORDERED.**

Dated:   New York, New York
         October 30, 2007

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to the following:

Andrew J. Schatkin, Esq.
350 Jericho Turnpike
Jericho, NY 11753
Attorney for Plaintiff

John Keil, Esq.
Collazo Carling & Mish LLP
747 Third Avenue
New York, NY 10017-2803
Attorney for Defendants